## THE JOHN FLEMING. THE SUIR. THE SHANNON. THE BESSIE WHITING.

(District Court, E. D. New York. December 31, 1906.)

COLLISION—SCHOONER AND MEETING TOW.

A tug with two loaded mud scows in tow *held* solely in fault for a collision between the scows and a meeting schooner in the Swash Channel at night; it appearing by a preponderance of the evidence that she crossed the bow of the schooner immediately before the collision.

In Admiralty. Cross-suits for collision.

Wing, Putnam & Burlingham, for Dayton and others, owners of the Bessie Whiting.

Peter S. Carter, for Brown & Fleming Contracting Co.

James J. Macklin, for the John Fleming.

THOMAS, District Judge. The schooner Bessie Whiting, loaded, at about 2 a. m. on December 27th, collided with two loaded mud scows, tandem, in tow of the tug Fleming. The tug's hawser, from 60 to 70 fathoms in length, extended to the scow Shannon, from which a hawser, some 6 to 7 feet in length, extended to the scow Suir. The schooner and Shannon were sunk. The Suir capsized. The libel and cross-libel are filed to recover damages for the injuries sustained by the respective parties. The collision was in the Swash Channel, which runs from southeast to northwest. The wind was southwest or west southwest and moderate, and the tide strong ebb. The schooner passed to the port of the tug Lawrence, with a tow of mud scows, and ported slightly for this purpose, but her wheel was shortly steadied to pass a tug and tow, which were passed to starboard. Behind these tows was the Fleming. The schooner's evidence is that the Fleming's green light was first seen, then both her lights, and then her red light, which, if true, indicates that the Fleming crossed the schooner's bow, although the schooner's helm was put hard-up to avoid collision. If this contention is true, the Fleming crossed the schooner's bow, and her liability is obvious. But the Fleming's contention is, and evidence is given to support it, that the Fleming and her scows were at all times on the port hand of the schooner, and that the Fleming was lapping the Lawrence's tow; that the schooner luffed twice, and finally brought herself into collision; that, in fact, the schooner was unmanageable, as she was carrying no jibtopsail, nor flying jib, and that the spanker, with one reef, was not properly balanced by proper foresails. The schooner carried a jib, fore staysail, mainsail, main topsail, and reefed spanker. The other foresails were omitted on account of an injury to them off the coast of Virginia. But she had sailed into Delaware Breakwater, whence after repairing certain of her sails, undergoing inspection by an underwriter's surveyor, and receiving a

certificate to proceed, she had come without injury and, so far as appears, without difficulty, to the place of collision. Nevins, the master and pilot of the Lawrence, stated that the schooner passed the Lawrence, "acting all right," and then aberrated in her navigation in very much the way claimed by the Fleming. Did the schooner luff? That is the vital question. It is unimportant on which side of the schooner the Fleming was, if the schooner did not luff, for the schooner was privileged, and it was the duty of the Fleming to keep out of her way. It will be noticed that the evidence of Nevins is not necessarily inconsistent with that of the schooner. If the Fleming crossed the schooner's bow, and held her course towards, and probably to some extent along the Lawrence's tow, the schooner might seem to Nevins to be going towards the Fleming, and the steadying of the wheel of the schooner, and the subsequent paying off under her hard-up helm, would fairly account for the phenomena presented to Nevins.

It is unnecessary to notice and discuss all the evidence given to support the differing claims of the parties. Every phase of the subject has been presented by Mr. Carter in the brief for the Fleming. But after considering the evidence, and the inferences that may be drawn from it, the fact remains that the privileged vessel was struck by a tow, whose tug was primarily bound to keep the tow off, and the court is not satisfied that the alleged exculpatory event—that is, the luffing of the schooner—happened. She approached and sailed in a fair wind, in orderly course, past the Lawrence, and, as is claimed, suddenly began to behave badly, so as to throw herself in the way of the scows. This seems very improbable, and when resort is had to the evidence the Fleming certainly has not a preponderance.

It is urged that it is not probable that the Fleming would cross the schooner's bow. Probably her pilot considered that he had time to get on the port side of the schooner with his tug, and that was the case, but this necessitated carrying his scows across the tide, whose easterly set may have delayed his maneuver, whereby the scows did not clear. In any case, it seems that it is more reasonable to believe that the Fleming tried to get over on the westerly side of the channel, in the presence of the schooner, than that the schooner changed her course so suddenly and to such a degree as to bring about the collision.

The libelants should have a decree against the Fleming, and the cross-libel should be dismissed.